UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                          :
THOMAS POE,                               :    CASE NO. 1:08-cv-00262
                                          :
         Plaintiff,                       :
                                          :
vs.                                       :    OPINION & ORDER
                                          :    [Resolving Docs. No. 36, 45.]
GMAC COMMERCIAL FINANCE LLC,              :
                                          :
         Defendant.                       :
                                          :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this opinion and order, the Court considers Defendant GMAC Commercial Finance LLC's motion for summary judgment in this age-discrimination case. [Docs. 36, 43, 48.] Plaintiff Thomas Poe opposes the Defendant's motion. [Docs. 40, 44.] The Court also addresses the Plaintiff's motion to strike a supplemental affidavit attached to the Defendant's reply brief. [Doc. 45.] The Defendant opposes this motion. [Docs. 49.]

For the reasons stated below, the Court **GRANTS** the Defendant's motion for summary judgment and **DENIES** the Plaintiff's related motion to strike.

**I. Background**

GMAC Commercial Finance LLC ("GMAC") is a subsidiary of GMAC LLC, a global financial services company that operates in the auto finance, real estate finance, and commercial finance businesses. [Doc. 36-4 at 2.] GMAC provides capital for middle-market businesses largely through private equity sponsors. [Doc. 40-2 at 47-48.]

In June 2005, GMAC opened an office in Cleveland, Ohio to expand its business in the midwest. [Doc. 36-5 at 5.] The company hired Plaintiff Thomas Poe ("Poe") into the Cleveland office as GMAC's Managing Director of the Cleveland office and as a Business Development Officer ("BDO") for the overall GMAC organization. [Docs. 36-2 at 8, 40-2 at 49.] Poe was fifty years old at the time that GMAC hired him. [Doc. 36-6 at 7.] Before joining GMAC, Poe was President and CEO of National City Commercial Finance ("National City"). [Doc. 40-2 at 40.] Two of his National City colleagues, Elizabeth Lynch ("Lynch") and Shane Leary ("Leary"), joined GMAC's Cleveland office with Poe. GMAC hired Lynch as another BDO and Leary as a Marketing Specialist. [Docs. 40-4 at 42, 40-5 at 4.] Together, the three comprised the Cleveland office.

Approximately two to three years later, David Baker ("Baker"), the Senior Managing Director of GMAC's Structured Finance Division, and George Triebenbacher ("Triebenbacher"), the President of GMAC's Structured Finance Division, made the decisions to close the Cleveland office and terminate Poe. [Docs. 36-4 at 2, 36-10 at 2.] The Plaintiff says the Defendant terminated him because of his age.

To support those decisions, Defendant GMAC draws attention to GMAC LLC's, and therefore its own, increasing financial challenges in the years following the opening of the Cleveland office. In response to these financial problems, the Defendant says that the company implemented various internal cost-cutting efforts. [Doc. 36-4 at 3-5.] Among other efforts, in 2006, GMAC merged its Asset Based Lending Division with its Structured Finance Division to reduce overhead. Id. Also in 2006, GMAC says that Cerberus Capital Management LP purchased a controlling interest in GMAC LLC and placed increased pressure on GMAC to increase profitability and cut costs. Id. at 3-4. In 2007 and 2008, GMAC closed its offices in Atlanta, Charlotte, Montreal and Toronto. Id. at 4-5.

In particular, the Defendant points to the Cleveland office's alleged failure to perform to explain why it closed this office in November 2007. [Doc. 36-2 at 11-12.] The Defendant mainly relies on a financial spreadsheet summarizing the Cleveland office's performance from 2006 through April 30, 2007. [Doc. 36-8.] According to this document, the Cleveland office had a net loss of over $775,000 in 2006 and was projected to lose almost $1,000,000 in 2007. *Id.*

Plaintiff Poe concedes that the office closed no deals in 2005, only one in 2006, and none in 2007. [Doc. 36-6 at 14.] However, he says that the Cleveland office was not the only office failing to perform. The Chicago, Detroit and Toronto offices, the other offices Baker supervised, also failed to close any deals in 2007. [Doc. 40-4 at 24-27.] Moreover, Lynch stated that she and Poe proposed multiple cash flow and asset based deals during this time period that Triebenbacher and Baker rejected. [Doc. 40-3 at 2-3.]

The Defendant says that to further reduce costs, Triebenbacher and Baker decided to close the Cleveland office in September 2007. [Docs. 36-2 at 12-13, 40-2 at 54.] In a September 25, 2007 conference call, Baker told Cleveland's three employees that its office would close in November 2007. [Doc. 40-2 at 19.] Baker also told them to contact Triebenbacher if they had interest in relocating to a different GMAC location for work. *Id.*

With the office closure, Poe's position terminated on November 16, 2007.[1] [Doc. 40-5 at 2-3.] As further discussed below, Poe says that there were job openings available for him within GMAC and that he repeatedly expressed an interest in relocation to Triebenbacher, Baker and Richard Daly ("Daly"), Executive Vice President of Human Resources. [Docs. 40-2 at 43.] However, he alleges that the Defendant terminated and failed to relocate him because of his age. Of the three Cleveland employees, GMAC ultimately only offered Leary, the substantially younger

---

[1] The Defendant admits that it did not terminate Poe because of his job performance. [Doc. 40-2 at 50, 77.]

employee, the opportunity to stay with the company through relocation. [Doc. 40-2 at 67, 69.][2/]

On or about December 21, 2007, the Plaintiff filed a complaint against the Defendant in the Cuyahoga County Court of Common Pleas alleging age discrimination. [Doc. 1-3.] On February 1, 2008, the Defendant removed the case to this Court. [Doc. 1-1.] On February 4, 2008, the Defendant answered the Plaintiff's complaint. [Doc. 6.] Plaintiff Poe filed an amended complaint on May 7, 2008. [Doc. 19-2.] With his amended complaint, the Plaintiff alleges that the Defendant's age discrimination toward him and other older workers at GMAC entitles him to relief under Ohio Revised Code §§ 4112.02(A), 4112.02(N) and 4112.99. [3/]

On July 1, 2008, the Defendant moved for summary judgment. [Doc. 36-2.] The Plaintiff opposed the Defendant's motion on July 14, 2008. [Doc. 40-1.] On July 21, 2008, the Defendant replied to the Plaintiff's opposition. [Doc. 43-1.] On July 23, 2008, the Plaintiff filed a surreply, which the Court permitted. [Doc. 44-1.] On that same day, Plaintiff Poe also moved to strike Triebenbacher's supplemental affidavit that the Defendant submitted with its reply brief. [Doc. 45-1.] On July 28, 2008, the Defendant responded to the Plaintiff's surreply and motion to strike. [Docs. 48-1, 49-1.]

## II. Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on

---

[2/] Triebenbacher testified that Leary did not apply for a new position but rather that "he basically stayed in the same position, just decided to take his same position and move to a different office where – where we had a need or could justify having a sales support person in that office." [Doc. 40-2 at 69.]
   The Court also notes that even though Leary was relocated to the Southfield office, he currently commutes from Cleveland to work in Southfield. The Defendant says that this commuting is temporary while Leary's wife wraps up her work in Cleveland and he addresses some health needs. [Doc. 40-2 at 67.]

[3/] Despite a pattern or practice allegation in his complaint, the Plaintiff presents no argument or evidence as to a pattern or practice of age discrimination at GMAC. At his deposition, Poe testified that any allegations he makes of a pattern or practice stem solely from his own experiences with GMAC. [Doc. 36-6 at 23.] With no other evidence as to GMAC's treatment of other older employees and because the Court finds that Poe's age discrimination claim fails, the Court rejects Poe's pattern or practice claim as well.

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party meets its initial burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). "A fact is material if its resolution will affect the outcome of the lawsuit." *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The moving party, however, is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corp.,* 477 U.S. at 323.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *See Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence

presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III.  Analysis

The Plaintiff brings an age discrimination claim under Ohio law.  Courts generally analyze age discrimination claims brought under Ohio law using the same framework as claims raised under the federal Age Discrimination in Employment Act ("ADEA").  *See Minadeo v. ICI Paints,* 398 F.3d 751, 763 (6th Cir. 2005).  A plaintiff can establish an age discrimination case either by providing direct evidence of discrimination or by satisfying the requirements of the burden-shifting *McDonnell-Douglas* paradigm through the use of indirect evidence.  *Id.*

### A. Direct Evidence[4/]

Direct evidence "proves the existence of a fact without requiring any inferences." *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 523 (6th Cir. 2007) (internal citation omitted).  The Sixth Circuit and the Ohio Supreme Court require "some degree of connection between the [allegedly discriminatory] comments and the relevant decision if the comments are to be considered even as *circumstantial* evidence of discrimination." *Id.* at 525.  *See also Byrnes v. LCI Commc'n Holdings Co.,* 672 N.E.2d 145, 149 (Ohio 1996).  Ohio courts interpret the direct evidence standard "to mean that the statement must be a statement by a decisionmaker.  'There is a vital difference between

---

[4/] The Court notes the Plaintiff's brief reference to the Ohio Supreme Court's *Mauzy* decision, *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 587 (Ohio 1996), and its discussion of direct evidence as a method of proof, as opposed to a type of evidence.  Other courts have recognized Ohio law's different language regarding "direct evidence." *See e.g.*, *Norbuta v. Loctite Corp.*, 1 Fed.Appx. 305, 312, fn. 1 (6th Cir. 2001).  In *Mauzy*, the Court explained the meaning of direct evidence as a method of proof: "It means that a plaintiff may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory intent." *Mauzy*, 75 Ohio St.3d at 587.  For the reasons described in this opinion, the Court finds that the Plaintiff loses under the *Mauzy* standard as well because the evidence he presents is insufficient for a jury to find that "that the employer more likely than not was motivated by discriminatory intent." *Id.*  Thus, the difference in language regarding direct evidence under Ohio and federal law is inconsequential in this case.

comments which demonstrate a discriminatory animus in the decisional process and stray remarks made by nondecisionmakers.'" *Coburn v. Rockwell Automation, Inc.,* 238 Fed. Appx. 112, 118 (6th Cir. 2007) (citing *Molnar v. Klammer,* 2005 WL 3528870, at *4 (Ohio Ct. App. 2005)).

In the instant case, the Plaintiff alleges that Triebenbacher made statements to Poe that constitute direct evidence of age discrimination.  Following the announcement of the Cleveland office closure, and during a September 28, 2007 breakfast meeting, Triebenbacher, Poe and Lynch discussed the possibility of Poe's and Lynch's relocation to work in a different GMAC office.  Poe testifies that Triebenbacher's "exact words were you probably wouldn't consider relocation." [Doc. 40-2 at 41.] According to Poe, Triebenbacher further stated that compared to their fellow substantially younger employee, Leary, "the kid [who] is pretty easy because he's just married, doesn't have kids, [and] can move easily," Poe and Lynch "might be a little tougher" to relocate.  [Docs. 36-6 at 22, 40-2 at 42.][5/] With her affidavit, Lynch confirms Poe's account: Triebenbacher said that he "could not imagine that Poe [or Lynch] would be interested in relocating given [their] ages and [their] ties to Cleveland, Ohio."  [Doc. 40-3 at 4.][6/]

Accepting the above allegations as true, the Court finds that the Plaintiff fails to provide direct evidence of age discrimination.  A reasonable juror would need to make an additional inference, after accepting the above statements as true, to find that Triebenbacher terminated and failed to relocate

---

[5/]Poe also testifies at a different point in his deposition, "I think George Triebenbacher's words to Liz and I in New York were you guys were an easy target.  And I'll describe easy target, at least in my words, that we were probably higher priced given our experience level and salary levels." [Doc. 36-6 at 23.]  With only Poe's subjective interpretation and with no additional information from Poe regarding the specific context surrounding the comment , the Court cannot find that this statement constitutes direct evidence of age discrimination.

[6/] Poe also asserts that Triebenbacher's statement that Poe "had difficulty adapting to change" is further direct evidence of age discrimination.  [Doc. 40-2 at 78.]  However, upon closer examination of the record, the Court finds that Poe misrepresents the context of this statement to the Court in his brief.  Triebenbacher made this comment in the context of Poe's ability to adapt regarding various applicable skills to GMAC's work; Triebenbacher in no way referenced Poe's age, directly or indirectly, in making this statement.  *See Peyton v. Kellermeyer Co.*, 115 Fed.Appx. 825, 829 (6th Cir. 2004) ("There are persons of every age who have difficulty adjusting to new demands, and we have no reason to suppose that anyone at Kellermeyer assumed Peyton was such a person on account of his age.")

Poe based at least in part on the impermissible factor of age. Further, Poe only points to this one conversation, rendering the alleged statements isolated. *Coburn,* 238 Fed. Appx. at 117 (considering whether comments are "isolated, ambiguous, or abstract").

Moreover, Poe himself minimizes the age-related significance of any comments made by Triebenbacher, Baker and Daly:

> Q. Going back to the decision to close the Cleveland office, did you ever hear any decision-maker state in any way that age was a factor in the decision to close the Cleveland office?
>
> A. No. . . .
>
> Q. Did you ever hear any statement by George Triebenbacher, Dave Baker or even Richard Daly for that matter, where age was in any way a factor in the decision to relocate you?
>
> A. Of course not. Why would they say that out loud?

[Doc. 36-6 at 20.] Poe's testimony that he himself did not interpret Triebenbacher's statements as explicitly age-related further weakens his direct evidence claim.

The Court finds that these statements do not constitute direct evidence of age discrimination. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) ("Direct evidence of discrimination is that evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.") (internal quotations omitted) (emphasis added).

**B. Indirect Evidence**

The Court evaluates indirect evidence under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this framework,

the Plaintiff has the initial burden to establish a *prima facie* case.[7] If the Plaintiff does so, the burden shifts to the Defendant to offer a legitimate, non-discriminatory reason for its actions.  If the Defendant provides such a reason, the ultimate burden of persuasion lies with the Plaintiff to prove that the Defendant's offered reason is a pretext for discrimination.  See *Cichewicz v. UNOVA Indus. Automotive Systems, Inc.*, 92 Fed.Appx. 215, 218-19 (6th Cir. 2004).

Here, the Court assumes that the Plaintiff meets his *prima facie* burden and proceeds to its analysis of the Defendant's alleged legitimate, nondiscriminatory reason for its actions as well as the Plaintiff's evidence that this reason is a pretext for age discrimination.

**1.  Defendant's Alleged Legitimate Nondiscriminatory Reason**

Assuming Poe meets his burden of establishing a *prima facie* case of age discrimination, the burden then shifts to GMAC to articulate a legitimate, nondiscriminatory reason for its decisions to close the Cleveland office, terminate Poe, and not relocate Poe.  See *Cichewicz*, 92 Fed.Appx. at 218-19.  GMAC says that it acted to cut costs amid serious financial troubles.

As described above, GMAC says that it was "under intense pressure, due to a variety of reasons, to improve [its] economic performance in 2006 and 2007." [Doc. 36-2 at 21.] The closing

---

[7] To prove a *prima facie* case of age discrimination under the *McDonnell Douglas* analysis, a plaintiff usually must show: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he "was either replaced by a substantially younger person, or was treated less favorably than a similarly situated employee from outside the protected class." *McElroy v. Philips Med. Sys. N. Am., Inc.,* 127 Fed. Appx. 161, 166 (6th Cir. 2005).  In the context of an alleged reduction in force, the fourth element may be modified if the employee is not actually replaced.  *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999).  In this context, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons" to satisfy the fourth element.  *Id.* (internal quotation omitted).  The burden of establishing a *prima facie* case is "relatively light."  *Felder v. Nortel Networks Corp.*, 187 Fed.Appx. 586, 591-92 (6th Cir. 2006) (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).

Some courts, like in *Godfredson*, present this version of the fourth element as an alternative way to meet the fourth element in a reduction in forces case where the Plaintiff was not replaced and therefore cannot show replacement by a younger individual.  The Defendant claims that other courts suggest that this showing is required as an additional and "heavier" showing.  *See e.g.*, *Wilson v. FirestoneTire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991); *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990).  The Court need not resolve this question because it assumes that the Plaintiff meets either version of the fourth element standard for the purposes of the analysis here.

of the Cleveland office represents one of many company-wide cost-cutting measures indicating the financial stress on the Defendant in 2006 and 2007. To illustrate, GMAC merged its Asset Based Lending Division with its Structured Financing Division to save costs. [Doc. 36-4 at 3.] Most dramatically, in addition to the Cleveland office, GMAC closed its offices in Atlanta, Charlotte, Montreal and Toronto in 2007 and 2008. [Doc. 36-4 at 4-5.]

GMAC also points to the Cleveland office's failure to perform to explain why it closed this office in November 2007. [Doc. 36-2 at 11.] The Cleveland office had a net loss of over $775,000 in 2006 and was projected to lose almost $1,000,000 in 2007. [Doc. 36-8.] Plaintiff Poe concedes that the office closed no deals in 2005, one in 2006, and none in 2007. [Doc. 36-6 at 14.] The Cleveland team also struggled to meet its annual performance objectives on deals and gross commitments among other goals. [Doc. 40-4 at 33.]

The Court finds that GMAC has met its burden of production to articulate a legitimate, nondiscriminatory reason for its decisions.

## 2. Plaintiff's Evidence of Pretext

After the Plaintiff meets his *prima facie* burden and the Defendant responds with a legitimate nondiscriminatory reason for its actions, the burden returns to the Plaintiff to provide enough evidence to present a genuine issue of material fact that the Defendant's reason is a pretext and that the real reason for its actions is age discrimination. The Plaintiff may accomplish this by showing that the Defendant's alleged reason has (1) no basis in fact, (2) did not actually motivate the Defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 532 (6th Cir. 2007).

The Plaintiff sets forth the following arguments to suggest that the Defendant's reason for its actions is a pretext for age discrimination: 1) GMAC did not terminate Poe as part of a reduction

in force, but rather GMAC hired others to replace Poe; 2) GMAC treated a younger similarly situated employee differently; 3) Triebenbacher's alleged age-related statements suggest age discrimination; and 4) alleged inconsistencies on the part of the Defendant suggest pretext.

*a. Replacement Argument*

The United States Court of Appeals for the Sixth Circuit describes replacement as follows:

> An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465.

Poe argues that substantially younger individuals replaced him. He points to GMAC's July and August 2007 hiring of Kenneth Pardue[8] and Michael Molenda, both approximately ten years younger than Poe, into BDO positions in the Chicago office. [Docs. 40-1 at 24, 44-4 at 4.]

As to Molenda, Poe presents no evidence that Molenda was hired to perform any of Poe's

---

[8] With his surreply, the Plaintiff suggests that GMAC actually hired Pardue in August 2007 to support his claim that GMAC hired him at the same time that it was closing the Cleveland office and terminating Poe. [Doc. 44-1 at 7-8.] The evidence before the Court shows that Pardue's offer letter is dated July 12, 2007 and that Pardue accepted the offer with his signature dated July 16, 2007. [Doc. 44-4 at 12-13.] Suspiciously not until his surreply, the Plaintiff presents metadata indicating that the document might have been created on August 21, 2007. [Doc. 44-4 at 5.] However, the Court notes that the Plaintiff also attaches other metadata documents to his surreply suggesting that the metadata does not correctly record the creation date of the original documents. [Doc. 44-4 at 6-8.]

Further, in response, the Defendant presents evidence that under the "Statistics" listing of properties, the creation date of the document is actually July 12, 2007. [Doc. 48-3 at 2.] The Defendant also presents a Microsoft document to explain why the "Statistics" creation date is more accurate than the creation date revealed under the "General" tab that the Plaintiff uses. [Doc. 48-4 at 2-3.] With her affidavit, Jeanine DeCastro, Human Resources Manager of GMAC, confirms that she created the Pardue letter on July 12, 2007 and explains that the August 21, 2007 date refers to her use and resaving of that document as a template to write Molenda's offer letter on August 21, 2007. [Doc. 48-6 at 2-3.]

Without any deposition testimony from Pardue on this point, with the offer letter and Pardue's acceptance signature dated in July 2007, with DeCastro's testimony, and with the questionable nature of the metadata indicated in the record, Poe's metadata argument is insufficient to show that the Defendant misled the Court by saying that it hired Pardue in July 2007.

Further, even if Pardue was not hired until August, and thus more clearly in the midst of Triebenbacher's and Baker's discussions regarding closing the Cleveland office, the Court's analysis does not change. For the reasons discussed in this section, the Court finds that Pardue did not replace Poe.

duties, and thus, presents no evidence that GMAC hired Molenda to replace Poe. Moreover, Poe fails to present any evidence to counter the Defendant's showing that Molenda is better qualified for the Chicago BDO position than Poe. Upon his hiring, Molenda had extensive experience and relationships in the Chicago market and had previously served as the BDO for GMAC's Chicago office from 2000 to 2005 with "an excellent work record." [Doc. 36-4 at 5.] Without more, reasonable jurors could not find that GMAC hired Molenda to replace Poe.

As to Pardue, Poe points to a GMAC internal memorandum to suggest that the Defendant hired Pardue to take over Poe's responsibilities in Cleveland:

> Ken Pardue, Director, will assume responsibility for calling in Cleveland and Pittsburgh from our Chicago office. Ken has long-established relationships in both of these markets that will ease the transition of existing relationships.

[Doc. 40-4 at 40.] First, Poe never alleges that he had any responsibility over Pittsburgh. Thus, to the extent that Pardue took over any of Poe's duties in the Cleveland market, that responsibility was in addition to his other responsibilities, including those in Pittsburgh and Chicago. Moreover, Poe provides no evidence to refute the Defendant's showing that GMAC hired Pardue to replace Thomas Stanley, who had resigned from the Chicago office on May 4, 2007.[9/] [Docs. 36-4 at 6, 36-10 at 3.]

Finally, as to both Molenda and Pardue, Poe does not present evidence to refute Triebenbacher's and Baker's statements that the Chicago BDO's primary job responsibilities "involve the Chicago area business market" and their assessments that Poe does not possess the "experience or relationships with the Chicago area private equity sponsors" that Pardue and Molenda have.[10/]

---

[9/] In a footnote in his surreply with no citation to record evidence, the Plaintiff claims that Stanley did not call upon Cleveland customers and therefore, a reasonable jury could find that Pardue replaced Poe and not Stanley. [Doc. 44-1 at 9, fn. 18.] With no evidence to support this allegation nor to refute the testimony that Pardue replaced Stanley, and with the evidence discussed in this section, the Court finds that no reasonable juror could find that GMAC hired Pardue to replace Poe.

[10/] The Plaintiff provides only weak evidence of his involvement with the Chicago market. Poe presents some vague testimony including that "[w]e started calling on Chicago day one in '05. I mean, we were there in July of '05."

[Docs. 36-4 at 5-7, 36-10 at 4.] Thus, the Plaintiff provides insufficient evidence that GMAC hired Molenda or Pardue to replace Poe.[11/] Therefore, Poe's replacement argument does not meet his burden to show pretext.

*b. Similarly Situated Employee Argument*

Poe claims that GMAC treated him differently than a similarly situated younger employee, Shane Leary. Following the Cleveland office closure, Poe claims that he and Leary were similarly situated as "Cleveland employees for whom Defendants had jobs if each expressed interest, and who did express such interest," but yet GMAC relocated the 31-year-old Shane Leary and not the 53-year-

---

[Doc. 44-2 at 20-21.] Poe also refers to some specific deals and says for example that "on our first visit to Chicago, myself, Liz [Lynch] and George Triebenbacher we surface[d] a deal with TMB, surfaced another deal with Focus. I mean, there were many deals that came up while we called them." *Id*. Poe does not describe his involvement in these deals and testifies that he never actually *closed* any deals in the Chicago market. [Doc. 36-6 at 18.] These vague references to involvement in the Chicago market are insufficient to refute the Defendant's evidence that Pardue and Molenda were better suited for the Chicago BDO positions.

[11/] Plaintiff Poe also briefly suggests that GMAC hired 45-year-old Rossi Felix and 51-year-old James Howell into BDO/Marketing managing director positions in Texas to replace him. [Doc. 40-1 at 13.] The Court notes that the Plaintiff misrepresents the age of James Howell by saying his age was 42. [Doc. 44-4 at 4.]

Poe presents no evidence to allow for a comparison between Felix and Howell and himself. He also presents no evidence to refute Triebenbacher's statements that GMAC hired Felix and Howell to work in the specialized health care lending sector in Texas, a field and location with which Poe has no relevant experience. [Doc. 43-7 at 3.] Therefore, Poe's argument that Felix and Howell replaced him also fails.

Poe also uses the "hiring" of Felix and Howell on January 1, 2008 to refute Triebebacher's assertion that GMAC has not hired any BDO's since closing the Cleveland office. [Doc. 43-6 at 19.] However, Poe presents no evidence to refute Triebenbacher's explanatory statements that Felix and Howell were hired from the inside as "part of [an] intra-company transaction" as further described in his affidavit. [Doc. 43-7 at 3.]

The Court denies the Plaintiff's motion to strike Triebenbacher's affidavit testimony on Felix and Howell because it finds that Triebenbacher's supplemental affidavit does not directly contradict record evidence and is offered in response to Poe's argument regarding Felix and Howell in his opposition brief. *See Aerel, S.R.L. v. PCC Airfoils, LLC,* 448 F.3d 899, 908 (6th Cir. 2006) ("If . . . there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue.") (internal quotations omitted). Triebenbacher's affidavit addresses the Plaintiff's argument that GMAC was hiring during this alleged cost-cutting period and that it hired Felix and Howell to replace Poe. The affidavit clarifies that Felix and Howell, while technically "hired," were "hired" as part of an "intra-company transaction" based on their experience in the health care lending field. Thus, the affidavit directly responds to an issue raised in the Plaintiff's response and helps the Court to clarify Felix's and Howell's positions within GMAC. *See Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 476 (6th Cir. 2002) (finding that consistent with Fed. R. Civ. P. 6(c)(2), "reply affidavits that respond only to the opposing party's brief are properly filed with the reply brief.").

The Court also notes that the Plaintiff had the opportunity to respond to the affidavit in its surreply, but chose not to. Thus, the Court denies the Plaintiff's motion to strike.

old Poe. [Doc. 40-1 at 25-26.] [Doc. 36-6 at 20.] Assuming that Poe survives the *prima facie* stage, as to showing pretext, the Plaintiff fails to rebut the Defendant's reason for treating Leary and Poe differently–that Leary expressed interest while positions were still available.

Poe does present some evidence that GMAC might have had a position available for him had he requested it.[12/] In particular, Poe points to Triebenbacher's references to a potentially available position in New York: "Specifically George had said that New York in the marketing area would probably fit for me . . . and that if we wanted to pursue it he had not run it up the flag pole and all that, but let him know." [Doc. 43-3 at 4.] Poe's statements referring to Triebenbacher's reference to the New York position indicate that at the time of these early conversations in late September and early October 2007, Triebenbacher thought that there might be a position available in New York. However, as Poe's own testimony indicates, Triebenbacher never promised or guaranteed Poe a position, and the record indicates that Poe needed to let Triebenbacher know if he had further interest. Poe presents insufficient evidence that he timely told Triebenbacher that he wanted to request a position in another city.

Poe claims that he expressed interest in relocation multiple times to Triebenbacher and Baker. [Doc. 40-2 at 43.] However, the record indicates that while Poe might have expressed vague interest in potentially relocating, he apparently concedes that he did not "directly" ask to be relocated until he sent an e-mail to Triebenbacher and Daly on October 30, 2007:

> [M]y conversations with George and Dave Baker in which there was clearly

---

[12/] In addition to what is described here, Poe suggests that Triebenbacher had the authority to create a new position for Poe had he wanted to by pointing to Triebenbacher's testimony: "Yes. I do have the authority to find him a job. . . . I have the ability to do - to manipulate the organization any way I wanted to, to fashion a position for Tom." [Doc. 40-2 at 58-59.] Surely Triebenbacher had no absolute duty to "fashion a position" for Poe if it was contrary to his business judgment to do so, especially when facing the financial situation the Defendant describes here.
  Poe says that he also expressed interest to or in front of Baker and Daly; however, Poe does not refute the Defendant's evidence that when he did so, Baker suggested Poe follow-up with Triebenbacher, which Poe did not directly do until October 30, 2007. [Doc. 40-3 at 4-5.]

> opportunities available, but when I *really* did ask, I got an answer from Dave Baker and a voicemail that said there was nothing available. . . .
>
> The fact that I was in three separate conversations offered the chance to talk about relocation, to figure out what to do about it and *when I finally asked directly* about these conversations, I got nothing.

[Doc. 36-6 at 21-23.] (emphasis added).  According to his own deposition testimony, only in the October 30, 2007 e-mail did he "press[] the point of saying . . . that I wanted to consider relocation, let's talk."  [Doc. 36-6 at 20.]  With the e-mail, he stated:

> Per our earlier discussion, please keep me in mind for any other available opportunities within the company.  I am willing to consider relocation.

[Doc. 40-4 at 37.][13/]  Thus, Poe's own words suggest that his communications prior to October 30, 2007 regarding relocation were vague.[14/]  The above testimony undercuts his argument that he had explicitly and directly expressed interest in relocation prior to the e-mail and supports the Defendant's evidence that while he may have vaguely discussed relocation with Triebenbacher and Baker, he did not directly request to be relocated until this e-mail.

In contrast, the Defendant presents evidence that Leary expressed interest in relocation earlier than Poe.  For example, at an October 12, 2007 meeting, Baker recalls Leary raising his hand to express interest in relocating while Poe and Lynch did not.  [Doc. 36-7 at 6.]  Consistent with this testimony is Daly's statement that at the meeting, Poe and Lynch "weren't interested in the terms of

---

[13/] Poe indicates that the "earlier discussion" that he is referring to is the September 28, 2007 breakfast he had with Triebenbacher and Lynch.  [Doc. 43-3 at 4.]  This October 30, 2007 reference to his September 28, 2007 meeting further suggests that he did not directly follow-up with Triebenbacher regarding relocation between the two meetings.

[14/] Poe points to Triebenbacher's statement that Poe "definitively" said he was not interested in relocating and Baker and Daly's testimony that they did not relocate Poe "sole[ly]" because of his unwillingness to relocate to suggest that the proffered nondiscriminatory reason is false and therefore a pretext.  [Docs. 40-2 at 52, 44-2 at 5-6, 10.]  Considered in the light most favorable to Poe, while the record suggests that Poe did not "definitively" reject the relocation option, the record does suggest that Poe failed to directly express genuine interest in relocation until October 30, 2007 as described above.  When viewing the record as a whole and in context, the Court does not find that the statements described in this footnote are sufficient to challenge the Defendant's evidence that even if Poe expressed vague or potential interest in relocation, he did not directly do so until October 30, 2007.

an offer. . . . I do recall Shane [Leary] talking about he was interested, he seemed to have more of an interest." [Doc. 43-5 at 9.] Finally, the record suggests that GMAC extended an offer to Leary around October 17 or 19, 2007, almost two weeks before Poe's e-mail directly expressing interest in relocation opportunities.[15] [Doc. 44-4 at 9.]

Thus, Poe and Leary are not as similarly situated as Poe suggests. Poe presents no evidence to refute the Defendant's showing that Leary received a position because he sought out the relocation earlier than Poe and most important, when an applicable position was still available.[16] Further, Poe presents nothing to refute the Defendant's evidence that by October 30, 2007 there were no longer positions available.[17] [Docs. 36-7 at 6, 36-9 at 3.]

Thus, the Court does not find that GMAC's relocation of Leary, but not Poe, is sufficient to show that GMAC's real reason for its actions is age discrimination.

c. Age-Related Statements Argument

The Court incorporates its discussion from Section III.A regarding Triebenbacher's allegedly age-related statements. The Court reminds the reader that these statements were made at the same meeting where Poe testified that "[s]pecifically George had said that New York in the marketing area

---

[15] Poe also admits that Leary was better qualified for the job he received in the Southfield office than Poe. [Doc. 36-6 at 22.] Because Poe does not provide sufficient evidence to refute the Defendant's contention that there was a need for Leary in the Southfield office, [Docs. 42-5 at 7, 40-2 at 69.], that Leary was more qualified for the Southfield position than Poe, and that Leary expressed interest in relocation earlier than Poe, the Court does not find that Daly's e-mail reference to the "possibility of relocating" being "particularly true for Shane Leary" to be sufficient evidence to suggest age discrimination over the alleged nondiscriminatory reason. [Doc. 40-4 at 41.]

[16] Poe presents no deposition testimony from Leary to refute the Defendant's assertions that Leary expressed his interest earlier than Poe. Further, with his own deposition, Poe admits that he does not have personal knowledge regarding when and how Leary obtained his position in the Southfield office. [Doc. 36-6 at 20.]

[17] To illustrate, Baker suggests a worsening of GMAC's economic status between the September 25, 2007 decision to close the Cleveland office and Poe's October 30, 2007 e-mail. He says that the company faced a "crisis" and that "there was so much uncertainty about how the business was going to perform going forward with - given a significantly different cost of funds, given problems at our parent, and so on, that there - there wasn't an opportunity to do any hiring at this point." [Doc. 36-7 at 6.] *See also* [Doc. 43-6 at 19, 21.]

would probably fit for me . . . and that if we wanted to pursue it he had not run it up the flag pole and all that, but let him know." [Doc. 43-3 at 4.] Thus, at the same time that Triebenbacher made these alleged age-discriminatory statements, Triebenbacher offered Poe that he would "run [the New York relocation option] up the flag pole" if he asked. With Poe's concession that he did not "directly" follow-up with Triebenbacher regarding relocation until October 30, 2007, a reasonable juror could not find these statements sufficient to establish pretext for discrimination.

d. *Alleged Inconsistencies Argument*

Poe claims that various alleged inconsistencies surrounding the Defendant's cost-cutting explanation suggest that the Defendant's purported legitimate, nondiscriminatory reason is a pretext for age discrimination. First, Poe says that discussions about closing the Cleveland office began at least as early as June 2007 when Triebenbacher requested the spreadsheet indicating the Cleveland office's income and expenses for 2006 and 2007. [Doc. 40-2 at 56.] However, Triebenbacher and Baker testify at other times that they first considered the idea of the closure only in August or September 2007. [Doc. 40-2 at 13, 65.][18] Second, although these alleged cost-cutting discussions began in June, GMAC hired other people into BDO/Marketing positions in other offices between July 2007 and March 2008. [Doc. 44-4 at 4.] Third, while Triebenbacher testified that no documents other than the financial spreadsheet were relied upon in deciding to close the office, Baker testified that he had not seen the document prior to his deposition.[19] [Doc. 40-2 at 13, 57.] The Plaintiff

---

[18] As described in footnote 8 and the accompanying text, the Court finds the Plaintiff's argument regarding the timing of the beginning of the discussions regarding closure of the Cleveland office unpersuasive; even if the Defendant was contemplating closure of the Cleveland office near the same time that it hired Pardue and Molenda, the Court would find that the record shows that GMAC did not hire those two individuals to replace Poe given their experience in and ties to the Chicago area market.

[19] Although Baker said that he had not seen the document, he testified that the information contained in it was consistent with the information Triebenbacher and his staff described to him. [Doc. 43-4 at 4.] He said that because Triebenbacher and his staff gathered cost information, the data was "described to me, it was not provided to me." *Id.*

points to these inconsistencies to challenge the Defendant's decision-makers' credibility, to suggest that the Defendant was not actually trying to cut costs when it terminated Poe, and to show that there were positions available for a possible relocation for Poe as early as July 2007. The Court has already addressed the Defendant's hiring in other offices and finds the remaining alleged inconsistencies insignificant.[20]

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** the Defendant's motion for summary judgment and **DENIES** the Plaintiff's related motion to strike.[21]

IT IS SO ORDERED.


Dated: August 18, 2008                          s/         *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[20] Poe also says that GMAC's records regarding Poe's departure are inconsistent. GMAC's November 14, 2007 termination form says that Poe was involuntarily terminated by "mutual agreement." [Doc. 40-5 at 2.] However, GMAC's December 4, 2007 version of the same form says that Poe was involuntarily terminated because of "office closure." [Doc. 40-5 at 3.] Poe presents no evidence to refute GMAC's explanation for the change that "for a period of time Poe gave indications that he planned to sign a mutual release agreement." [Doc. 43-1 at 22, fn. 14 (citing Doc. 43-6 at 19.)] Moreover, in the record, Poe cuts off Daly's explanation, to the extent he had one, of the differences between the different descriptions. [Doc. 40-2 at 28.] Contrary to the Plaintiff's assertion, Daly's testimony does not indicate that a mutual agreement indicates that the employee had the option to remain employed. *Id*. Without more, the Court cannot find this change in designation sufficient to show pretext.

[21] For the reasons stated above, the Court does not find oral argument necessary in this case and therefore denies the Defendant's request for such argument.